### WILLIAMS et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. December 1, 1923.)

No. 4052.

1. **Criminal law ⊛113—Conspiracy in restraint of interstate commerce may be prosecuted in any district in which acts in its furtherance are committed.**

    A conspiracy in restraint of interstate commerce, in violation of Sherman Anti-Trust Act, § 1 (Comp. St. § 8820), may be prosecuted in any district in which any of the conspirators have committed acts in carrying out its purpose.

2. **Criminal law ⊛25—Conspirators must be held to have intended the necessary consequences of their acts.**

    Where the evidence tended to establish a conspiracy by defendants to disable locomotives used generally on an interstate railroad, while in the shops, the necessary effect of which would be to cripple the service and directly interfere with interstate transportation, it is no defense that defendants had no thought of such effect, but that their purpose was only to injure the property of the railroad company.

3. **Conspiracy ⊛28—Acts done to injure locomotives held in restraint of interstate commerce, though they were not then in actual use.**

    Under an indictment for conspiracy in restraint of interstate commerce, where pursuant to the conspiracy defendants put quicksilver in the boilers of locomotives in general use on an interstate railroad. while they were in the shops for repairs, in the expectation that when the locomo-

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tives were fired and in use the quicksilver would injure the boilers and disable them, it is immaterial that they were not in actual interstate use when the quicksilver was introduced.

In Error to the District Court of the United States for the Western District of Texas; William R. Smith, Judge.

Criminal prosecution by the United States against J. E. Williams and others. Judgment of conviction, and defendants bring error. Affirmed.

J. G. McGrady, of El Paso, Tex., and Charles Murphy, of Houston, Tex. (Lea, McGrady, Thomason & Edwards, of El Paso, Tex., and Charles A. Murphy, of Houston, Tex., on the brief), for plaintiffs in error.

H. R. Gamble, Sp. Asst. Atty. Gen., and N. J. Morrison, Asst. U. S. Atty., of El Paso, Tex. (John D. Hartman, U. S. Atty., of San Antonio, Tex., and N. J. Morrison, Asst. U. S. Atty., and H. R. Gamble, Sp. Asst. U. S. Atty., both of El Paso, Tex., on the brief), for the United States.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. The plaintiffs in error (herein called defendants) were convicted under an indictment against them and others which, omitting formal parts, charged as follows:

"That heretofore, to wit, on or about the 1st day of September, 1922, at Houston, Tex., one J. E. Williams, one Charles Poe, one C. C. Hanley, one John F. Doak, one John B. Yocham, one H. H. Dietz, one J. M. Morgan, one James L. Doak, and one Val Callaway entered into a conspiracy in restraint of trade and commerce among the several states in violation of section 1, chapter 647 of the Act of Congress of July 2, 1890, commonly known as the Anti-Trust Act (26 Stat. 209), that is to say, the said J. E. Williams, the said Charles Poe, the said C. C. Hanley, the said John F. Doak, the said John B. Yocham, the said H. H. Dietz, the said J. M. Morgan, the said James L. Doak, and the said Val Callaway did conspire, combine, confederate and agree together to do certain acts in restraint of trade and commerce among the several states, at Houston, Harris county, at San Antonio, Bexar county, at Del Rio, Val Verde county, and at El Paso, El Paso county, and at various other places in the state of Texas, namely, to injure and disable locomotives engaged and being used in interstate commerce through and by means of the introduction into the boilers of such locomotives of quicksilver and other injurious chemicals and materials to your grand jurors unknown, at what are commonly known as the Southern Pacific shops, Houston, Tex., the "Sap" shops, and the Southern Pacific shops, in the city of San Antonio, Western district of Texas and the Southern Pacific shops in the city of El Paso, in the Western district of Texas, and within the jurisdiction of this court, such locomotives so injured and disabled, and to be injured and disabled as aforesaid, being in service and regularly used for the transportation of interstate commerce on the lines of railroad of the Southern Pacific system and the San Antonio & Aransas Pass system and other railroads operating within the Western district of Texas and, engaged in interstate commerce; and said conspiracy so entered into as aforesaid at the time and place mentioned was thereafter and on or about the 6th day of September, 1922, continued and renewed, and put into effect at San Antonio, Tex., in the San Antonio division of the Western district of Texas, and within the jurisdiction of this court; and said conspiracy so entered into as aforesaid at the times and places mentioned was thereafter and on or about the 11th day of September, 1922, continued and renewed and put into effect at El Paso, Tex., in the El Paso division of the Western district of Texas and within the jurisdiction of this court."

Rulings of the court mentioned herein are duly presented for review.

[1] The court ruled to the effect that the conspiracy charged, though it was entered into at Houston, which is in the Southern district of Texas, could be prosecuted in the Western district of Texas, if in pursuance of the conspiracy one or more of the conspirators did in the last-named district some act to further such conspiracy and to effect the object thereof. That ruling was not erroneous. The conspiracy charged, being one which is made a misdemeanor by section 1 of the Sherman Act (26 Stat. 209 [Comp. St. § 8820]), is subject to prosecution upon its being entered into without the doing of an overt act to effect the object of it. Nash v. United States, 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232. The common-law rule that the venue in conspiracy could be laid in any county in which it could be proved that an overt act was done by any one of the conspirators in furtherance of their common design was clearly recognized in the opinion in the case of Hyde v. United States, 225 U. S. 347, 365, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614, which cited with approval authorities supporting that rule. Under that rule the conspiracy charged could be prosecuted in the jurisdiction in which the indictment was found, allegations and evidence showing that overt acts were committed in that jurisdiction by some of the alleged conspirators.

[2] The charge of the court to the jury contained the following:

"If the necessary effect of the conspiracy when carried into effect is to directly restrain commerce among the several states, it is immaterial and unimportant whether the conspirators intended such conspiracy should have such effect or not, and it is immaterial and unimportant that such conspirators may have had other objects or purposes in view."

As applied to the issues raised by the pleadings and the evidence, that instruction was not erroneous. Evidence disclosed that the transactions relied on to support the charge made grew out of the railroad shopmen's strike, which started in July, 1922. A feature of a plan which evidence tended to prove was agreed on at Houston between some of the striking shopmen and officials of the union to which they belonged was that strikers or members of their union would, under assumed names and concealing their identity, get employment in Southern Pacific Railway Company shops in San Antonio and El Paso, and while so employed would disable engines of the railway company by putting quicksilver in engine boilers; it being contemplated that the quicksilver, by acting on the copper at the joints between the flues and the steel engine walls, would cause the flues to leak. In behalf of the defendants it was contended that the motive of the parties to the agreement was to injure property of the railway company and to promote the success of the strike, and that interference with interstate commerce was not thought of by them. Undisputed evidence showed that the Southern Pacific Railway Company was engaged in interstate commerce by railroad. Engines are indispensable to such commerce. Pedersen v. Delaware, Lackawanna & Western R. Co., 229 U. S. 146, 151, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. Evidence adduced supported a finding that a necessary effect of the successful

execution of the plan agreed on would be directly to restrain commerce among the several states, by disabling indispensable instrumentalities of such commerce.

Restraint of interstate commerce is a necessary effect of executing a contract or agreement to disable, not engines which may or may not be used or destined to be used in interstate commerce, but engines generally of an interstate carrier by railroad. "The conspirators must be held to have intended the necessary and direct consequences of their acts, and cannot be heard to say the contrary. In other words, by purposely engaging in a conspiracy which necessarily and directly produces the result which the statute is designed to prevent, they are, in legal contemplation, chargeable with intending that result." United States v. Patten, 226 U. S. 525, 543, 33 Sup. Ct. 141, 57 L. Ed. 333, 44 L. R. A. (N. S.) 325; United Leather Workers International Union v. Herkert & Meisel Trunk Co. (C. C. A.) 284 Fed. 446. That contracts or agreements having the necessary effect of restraining trade or commerce among the several states cannot be taken out of that category by indulging in general reasoning was distinctly recognized in the opinion in the case of Standard Oil Co. v. United States, 221 U. S. 1, 65, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734. The fact that the execution of the conspiracy now in question would have the necessary effect of directly, materially, and substantially restraining interstate commerce by disabling indispensable instrumentalities of such commerce clearly distinguishes that conspiracy from the agreement or plot in regard to coal mining which was in question in the case of United Mine Workers v. Coronado Co., 259 U. S. 344, 42 Sup. Ct. 570, 66 L. Ed. 975. As to the relation of coal mining to interstate commerce, the following was said in the opinion in that case (259 U. S. 410, 42 Sup. Ct. 583, 66 L. Ed. 975):

"Coal mining is not interstate commerce, and obstruction of coal mining, though it may prevent coal from going into interstate commerce, is not a restraint of that commerce, unless the obstruction to mining is intended to restrain commerce in it, or has necessarily such a direct, material, and substantial effect to restrain it that the intent reasonably must be inferred."

The just-quoted statement impliedly recognizes the correctness of the above-stated conclusion as to such a conspiracy as the one which is in question in the instant case. The conspiracy now in question being such a one as makes the parties to it chargeable with the intention to produce the result which the statute is designed to prevent, they could not escape the legal consequences of their conduct by showing that in so conspiring they were influenced by other motives or purposes.

[3] The court's charge to the jury contained the following:

"Evidence has been introduced before you tending to show that at the time the quicksilver was introduced into the engines of the locomotives (if it was so introduced therein) such locomotives were in the shops undergoing repairs, and at the time not actually engaged in interstate transportation or commerce. This case is not to be decided upon the question as to whether or not said locomotives were at the time actually engaged in interstate commerce."

That this instruction was not improper we think is manifest when it is considered in the light of evidence adduced as to the way quicksilver would, and was expected by the conspirators to, be effective in disabling

295 F.—20

locomotives in the boilers of which it was put. There was evidence tending to prove that it was contemplated by the defendants that the putting of quicksilver in the boiler of a locomotive while it was in a shop undergoing repairs would not immediately disable the locomotive, but that the substantial damage would begin to be done after the locomotive was fired up and ready for its run, in consequence of the heat causing the quicksilver to vaporize and to reach the copper at the connections of the flues with the boiler walls, and that such damage would continue to be done for about eight hours after the locomotive was fired up, and until it might be expected to be engaged in its run. If it was contemplated that the doing of what was agreed to be done would result in the disabling of locomotives while they were in use as instrumentalities of interstate commerce, it is not material that at the time of the use of the means intended to accomplish that result the locomotives were not actually engaged in interstate commerce.

Other rulings complained of have been considered. The conclusion is that the record does not show that any reversible error was committed.

The judgment is affirmed.