UNITED STATES v. M. PIOWATY & SONS et al.

(District Court, D. Massachusetts.    September 12, 1917.)

No. 1236.

1. MONOPOLIES ⬅29—OFFENSES—VIOLATION OF ANTI-TRUST ACT.
    Under the Sherman Act an unlawful agreement is the essence of the offense of combination or conspiracy, and to hold it illegal for persons in the same business and trade organization, after exchanging information and views, to act in the same way, but independently of each other, on buying, selling, or prices, would unduly extend the scope of the act and cause much confusion.

2. MONOPOLIES ⬅29—OFFENSES—INFERENCES.
    An unlawful agreement, which is the essential of the offense of combination or conspiracy denounced by the Sherman Act, may be tacit as well as expressed, and its existence may be inferred, even in criminal cases, from the conduct of the parties.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. MONOPOLIES ☞31—OFFENSES—INDICTMENT—"CONCERTED."

An indictment charging that defendants, with certain other members of an association, unlawfully entered into a combination in restraint of trade, to be brought about by a concerted plan, *held*, despite the use of the word "concerted," which often, but not necessarily, indicates an agreement, not to charge an unlawful agreement, which is the essence of the offense of conspiracy under the Sherman Act.

4. MONOPOLIES ☞31—OFFENSES—INDICTMENT.

An indictment charging a combination and conspiracy to monopolize the trade in Northern onions, in violation of the Sherman Act, etc., *held* sufficient to charge that defendants acted jointly and by agreement, though not expressly so stating.

M. Piowaty & Sons and others were indicted for violating Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209. On demurrer to indictment. Demurrer sustained to first count, and demurrer to second count overruled.

Gardner Perry, of Boston, Mass., for defendants Belden.

Eaton & McKnight, of Boston, Mass., for defendant Austin, specially.

George R. Sheldon, of Middleport, N. Y., for defendants Jackson-Sebring Co., Sebring, and Jackson.

MORTON, District Judge. This is an indictment under the Sherman Anti-Trust Act (26 Stat. 209). The defendants have demurred, assigning many grounds of demurrer. So far as they relate merely to the sufficiency of the language used, they seem to be not well founded, nor to require discussion. The principal question is whether the facts alleged in either count constitute a violation of the statute.

The indictment, as I construe it, sets out the following facts: Practically all onions used during winter and spring are grown in certain Northern states and are called "Northern onions." There is a recognized and defined trade in them of interstate character. Upon being harvested in the autumn, they are stored until the need for them arises. Then they are taken out of storage and turned into the general channels of commerce. Growers of onions sell their product to middlemen, who buy in the autumn, store the onions for a time, and sell them later to the jobbing and retail trade. In these respects, onions do not appear to differ materially from other winter vegetables, except, perhaps, in the extent to which they are bought and stored by middlemen.

[1-3] Various persons interested in buying and selling onions formed an association called the National Onion Association. Nothing is stated in the indictment as to the purposes, constitution, by-laws, or rules of this association. Its members were apparently middlemen. During the storage season in each of the years specified in the indictment, 75 per cent. of the existing Northern onions were owned or controlled by the members of the association. There are no allegations as to the extent to which the buying market in the autumn was dominated by them, nor to what extent they bought in competition with outsiders. In these respects the case stated is very different from the Milk Cases. U. S. v. Whiting (D. C.) 212 Fed. 466.

Upon these facts, amplified in statement, the first count charges a combination or conspiracy in restraint of trade. Its vital allegations are as follows:

"The said defendants, together with certain other * * * members of said association, * * * unlawfully have engaged in a combination and conspiracy in restraint of said trade and commerce among the several states; * * * that is to say, * * * said defendants and said other members of said association have caused nearly all the Northern onions bought by the members of said association to be bought in accordance with a concerted plan followed and executed by said defendants and by said other members of said association and more fully hereinafter described, and have caused nearly all the storage onions and other Northern onions owned and controlled by the members of said association, being during the whole of said onion storage season more than three-fourths of the total then existing amount of said Northern onions, to be handled, sold, and disposed of in accordance with the concerted plan aforesaid, followed and executed by said defendants and by said other members of said association and more fully hereinafter described."

One of the grounds of demurrer is that a combination or conspiracy under the Sherman Act necessarily involves an agreement to which the persons charged were parties, and that no such agreement is alleged in this indictment. The government's position is, as I understand it, that no agreement is necessary, and that, if it is, the indictment sufficiently alleges one.

In U. S. v. Naval Stores Co. (C. C.) 172 Fed. 455, 460, it was said:

"The gist of the offense is the unlawful agreement. * * * Without corrupt understanding there is no conspiracy."

In Patterson v. U. S., 222 Fed. 599, 631, 138 C. C. A. 123, 155, the court said, with reference to a charge under this Act:

"'It is a partnership in criminal purposes' (quoting Holmes, J., U. S. v. Kissel, 218 U. S. 601 [31 Sup. Ct. 124, 51 L. Ed. 1168]) to which we might add, brought about by an agreement."

See, too, U. S. v. Greenhut (D. C.) 51 Fed. 205.

In Eastern States Lumber Ass'n v. U. S., 234 U. S. 600, 34 Sup. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788, relied on by the government, the language of the opinion indicates that the court so understood the law. It held that "the conspiracy" (i. e., the illegal agreement) might "be readily inferred" from the facts.

In my opinion, unlawful agreement is the essence of the offense of combination or conspiracy under the Sherman Act. It is what separates what is permitted from what is forbidden. To hold it illegal for persons in the same business and same trade organization, after exchanging information and views, to act in the same way, but independently of each other, on buying, selling, or prices, would extend the scope of the act beyond anything heretofore decided, and beyond its proper meaning, and would cause the greatest confusion and uncertainty.

The necessary agreement or understanding may, of course, be tacit, as well as expressed; its existence may be inferred—and, even in criminal cases, often is inferred—from the conduct of the parties. Eastern States Lumber Ass'n v. U. S., supra; U. S. v. Naval Stores Co. (C. C.)

172 Fed. 455, 460. Concert of action among the members of an association, in particulars such as are set forth in this indictment, strongly suggests agreement; but, if that is the construction which the prosecution places upon the defendants' conduct, it ought to be so stated.

The government's contention that the indictment alleges an agreement to which the defendants were parties is based principally on the word "concerted." It is a word which unquestionably is often used in a sense implying agreement. But it is also used to describe similar action by different persons with the same object in view, not proceeding from agreement between them. An unorganized mob may be said to make a "concerted" attack. If the indictment as a whole were obviously based on the assumption of an agreement to which the defendants were parties, it might be that the language used would be sufficient; but that is not this case. There is no allegation or direct suggestion that the defendants acted under agreement with each other. The absence of such an averment is apparently not due to inadvertence; it seems to be studiously avoided. The indictment appears to have been drawn on the theory that agreement was not essential. Its language and tenor are not such that the averment of one can be found by implication—certainly not with such clearness and definiteness as the defendants are plainly entitled to upon such an important allegation.

I greatly doubt whether the bald allegation that the defendants "caused" certain acts to be done by other persons not under their control, without stating how they did so, is sufficient; but it is unnecessary to decide this point. See In re Greene (C. C.) 52 Fed. 104, 112.

[4] The second count charges a combination and conspiracy to monopolize the trade in Northern onions. It incorporates by reference the allegations of the first count, descriptive of the Northern onion business and of the defendants. It then alleges in substance that the defendants and other persons have combined and conspired to monopolize said trade and commerce among the several states, as follows:

"For the purpose of enabling said defendants and said other members of said association to monopolize said interstate trade and commerce, and with the intent on the part of all of said defendants and of said other members to monopolize said trade and commerce, said defendants and said other members of said association continuously throughout said period of three years have concertedly conducted their respective businesses as such onion dealers in accordance with a plan adopted by said defendants and by said other members, which was intended to involve and which did involve:

"(a) The concerted acquisition by said defendants and by said other members of said association of substantially all the said Northern onions existing in the United States, for the purpose of later selling the same at an excessive profit.

"(b) The concerted hoarding and withholding from interstate trade and commerce aforesaid by said defendants and by said other members of large quantities of said Northern onions theretofore so acquired by them, to the end and at such times and in such manner that persons, if any, other than the defendants and said other members owning onions, would be induced before and during the early part of the onion storage season to market and dispose of all their onions, with the necessary result of creating for the defendants and said other members a monopoly of Northern onions shortly after the beginning of said onion storage season.

"(c) The raising of prices and the fixing of prices of said Northern onions in interstate commerce by means of the concerted hoarding and withholding from

interstate trade and commerce aforesaid by said defendants and by said other members of said association of large quantities of said Northern onions controlled by them."

The plan is adequately described. It cannot be said to be patently inadequate to accomplish the unlawful purpose and intent charged to have inspired it, nor obviously to involve no unlawful action by the persons participating in it.

This count states explicitly that the defendants, with the intent to monopolize the trade in question "adopted" said plan, an averment not found in the first one, and that they "concertedly conducted their respective businesses * * * in accordance therewith," which is also stronger and more definite than the corresponding allegations in count 1. If there were an express statement that the adoption of the plan by the defendants was brought about by agreement to that effect, I should have no doubt as to the sufficiency of this count. Taking it as it stands, and as a whole, it is plainly intended by it to charge a crime based on joint action aimed to secure a monopoly by a group of persons, among whom were the defendants. In many particulars such a joint action is explicitly alleged. While the point is not free from doubt, it seems to me that the defendants must be understood to have acted jointly and by agreement in the adoption of the plan, as well as in the particulars expressly so stated, and that the failure distinctly to allege that the adoption of the plan was by agreement is not of substantial importance, in view of the general tenor of the count and its other allegations. See Swift & Co. v. U. S., 196 U. S. at pages 394 and 395, 25 Sup. Ct. 276, 49 L. Ed. 518.

Various other grounds of demurrer were argued and have been considered. None of them seems to me well founded, nor to require discussion.

Demurrer to first count sustained.

Demurrer to second count overruled.