### UNITED STATES v. ARMOUR & CO. et al.
### No. 13807 Criminal.

District Court, W. D. Oklahoma.
Jan. 27, 1943.

Holmes Baldridge, Sp. Asst. to Atty. Gen., of Washington, D. C., and Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl. (Thurman Arnold, Asst. Atty. Gen., Daniel B. Britt and Thos. H. Daly, Sp. Assts. to Atty. Gen., and Robert Diller, Willis L. Hotchkiss, and Richard B. O'Donnell, Sp. Attys., all of Washington, D. C., on the brief), for plaintiff.

David I. Johnston, of Oklahoma City, Okl. (Charles J. Faulkner, Jr., and John Potts Barnes, both of Chicago, Ill., on the brief), for defendant Armour et al.

Frank G. Anderson and Rainey, Flynn, Green & Anderson, all of Oklahoma City, Okl. (A. K. Gembick, of Chicago, Ill., on the brief), for defendant Wilson et al.

VAUGHT, District Judge.

The indictment in this cause charges the defendants with having knowingly and continuously engaged in a conspiracy to fix prices for the sale of hogs in the Oklahoma City livestock market, the defendants named in the indictment being two corporations and five individuals.

The government, in its brief, states: "* * * paragraphs 17 and 18 charge the crime, paragraph 17 charging defendants with a conspiracy to fix prices on hogs purchased on the Oklahoma City livestock market and paragraph 18 setting out the means adopted to effect the objective of price fixing charged in paragraph 17; paragraphs 19 to 24 set out overt acts done pursuant to the conspiracy; * * *."

Paragraphs 17, 18 and 19 of the indictment, therefore, are set out in full as follows:

"17. During a period of approximately ten years immediately preceding the date of the return of this indictment, the defendants and other persons to the Grand Jurors unknown have engaged knowingly and continuously in a conspiracy to fix prices for the sale in the Oklahoma City livestock market of hogs shipped from points in Oklahoma and other states to the said market for sale therein, which conspiracy has been in restraint of the interstate trade and commerce described in this indictment and in violation of Section 1 of the Act of Congress of July 2, 1890, as amended (U.S.C., Title 15, Section 1 [15 U.S.C.A. § 1]), commonly known as the Sherman Act.

"18. It has been a part of the aforesaid conspiracy that the defendants Armour and Wilson purchase equal numbers of hogs each year and each month in the aforesaid livestock market; that the defendants Armour and Wilson, from time to time, purchase particular shipments of hogs received at the aforesaid market, divide the number of hogs in each of such shipments equally between themselves, and pay identical prices for the hogs in the shipments so divided; that the defendants Armour and Wilson regulate their Saturday buying of hogs in the aforesaid market on a reciprocal basis, the one refraining from Saturday purchases when the other enters the market on that day; that the defendants Armour and Wilson purchase hogs in the Oklahoma City livestock market at a fixed differential below hog prices in the livestock market at Kansas City, Missouri; that the defendants Armour and Wilson purchase garbage-fed hogs in the Oklahoma City livestock market at a fixed discount; and that the defendants Armour and Wilson threaten to cease purchasing hogs from commission firms selling to other buyers of hogs in the Oklahoma City livestock market and in other ways obstruct and impede the lawful buying and selling liberties of such commission firms and of buyers of hogs in the aforesaid market other than Armour and Wilson.

"19. During the period of time covered by this indictment and for the purpose of forming and effectuating the aforesaid conspiracy, the defendants by agreement and concerted action have done the things which, as hereinbefore alleged, they con-

spired to do, and more particularly have done, among others, the following acts and things:"

The defendants have filed separate demurrers to the indictment and in support thereof urge three general grounds.

"(1) The allegations of the indictment are so vague, indefinite, and uncertain as to fail to apprise defendants of the nature of the charge against them.

"(2) The indictment is defective because it charges several separate and independent conspiracies in a single count.

"(3) The indictment charges no offense against the natural persons made defendants."

The first and third grounds urged will be considered as a whole rather than in the subdivisions urged, as they are so interwoven as to make it imperative that they be so considered, and since the court reaches a definite conclusion as respects the first and third grounds, it will not be necessary to consider the second.

Counsel have submitted the case on oral argument and in addition thereto have filed briefs. Careful consideration has been given the oral arguments, the briefs and the authorities cited therein. In addition thereto, the court has made considerable research of the authorities independent of those cited in the briefs.

The crime of conspiracy is the most easily charged of all crimes, and when charged in general terms or in the simple language of the statute, is the most difficult to defend against. Because of its peculiar character, the wide scope covered by the allegation of a conspiracy, and the necessity of protecting the constitutional rights of the defendants so charged, a definite statement of the facts, which constitute the offense, is required. This requirement has been sustained by a long line of decisions by our appellate courts.

One of the earliest cases dealing with necessary allegations of an indictment, and the one perhaps most often quoted, is United States v. Cruikshank et al., 92 U.S. 542, 557, 23 L.Ed. 588, in which the court said: "In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right 'to be informed of the nature and cause of the accusation.' Amend. VI. In United States v. Mills, 7 Pet. [138], 142 [8 L.Ed. 636], this was construed to mean, that the indictment must set forth the offence 'with

clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged;' and in United States v. Cook, 17 Wall. [168], 174 [21 L.Ed. 538], that 'every ingredient of which the offence is composed must be accurately and clearly alleged.' It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars.' 1 Arch.Cr.Pr. and Pl., 291. The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."

■ In United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135, the court said: "In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent. United States v. Cruikshank, 92 U.S. 542 [23 L.Ed. 588]."

■ In United States v. Hess, 124 U.S. 483, 486, 8 S.Ct. 571, 573, 31 L.Ed. 516, the court, speaking through Mr. Justice Field, said: "The statute upon which the indictment is founded only describes the general nature of the offense prohibited; and the indictment, in repeating its language without averments disclosing the particulars of the alleged offense, states no matters upon which issue could be formed for submission to a jury. The general, and with few exceptions, of which the present case is not one, the universal rule, on this subject, is, that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment or implication, and the charge must be made directly, and not inferentially, or by way of recital."

■ In Pettibone v. United States, 148 U.S. 197, 203, 13 S.Ct. 542, 545, 37 L. Ed. 419, the court, speaking through Mr. Chief Justice Fuller, said: "A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means, and the rule is accepted, as laid down by Chief Justice Shaw in Commonwealth v. Hunt, 4 Metc., Mass., 111 [38 Am.Dec. 346], that, when the criminality of a conspiracy consists in an unlawful agreement of two or more persons to compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment, while if the criminality of the offense consists in the agreement to accomplish a purpose, not in itself criminal or unlawful, by criminal or unlawful means, the means must be set out." Citing in the opinion the Carll and Hess cases, supra.

■ In United States v. Kissel, 218 U. S. 601, 608, 31 S.Ct. 124, 126, 54 L.Ed. 1168, the court, speaking through Mr. Justice Holmes, in discussing an indictment for a conspiracy in restraint of trade, said: "A conspiracy in restraint of trade is different from and more than a contract in restraint of trade. A conspiracy is constituted by an agreement, it is true, but it is the result of the agreement, rather than the agreement itself, just as a partnership, although constituted by a contract, is not the contract, but is a result of it. The contract is instantaneous, the partnership may endure as one and the same partnership for years. A conspiracy is a partnership in criminal purposes. That as such it may have continuation in time is shown by the rule that an overt act of one partner may be the act of all without any new agreement specifically directed to that act."

The foregoing decisions of our highest court not only define a conspiracy as a criminal offense, but determine what allegations in an indictment would constitute a criminal conspiracy.

The Tenth Circuit Court of Appeals, in following the rule laid down by the Supreme Court, passed upon this question. In Marcante v. United States, 49 F.2d 156, 157, in an opinion by Judge McDermott, the court said: "A conspiracy is bottomed on an agreement to accomplish an illegal act, and without such agreement there can be no conspiracy; a conspiracy 'is a partnership in criminal purposes.' United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 126, 54 L.Ed. 1168."

 In Thomas v. United States, 10 Cir., 57 F.2d 1039, 1042, this court, speaking through Judge Phillips, said: "Mere knowledge or approval of or acquiescence in the object and purpose of a conspiracy without agreement to cooperate to accomplish such object or purpose is not enough to constitute one a party to the conspiracy."

In White v. United States, 10 Cir., 67 F.2d 71, 79, the court quoted from an opinion of Judge Hutcheson in Grimsley v. United States, 5 Cir., 50 F.2d 509, as follows: " 'No case has yet been found by me which declares that failure to charge the essential element of an offense is a mere technicality; on the contrary, there is general concurrence in the statement that if "the indictment fails to state facts sufficient to constitute the crime charged, the judgment of conviction cannot, of course, be sustained," * * *.' " And after quoting further from the Fifth Circuit Court opinion, the court concluded its opinion by stating: "In dealing with laws which are intended equally for the protection of the innocent as well as the punishment of the guilty, too much latitude should not be indulged solely for the purpose of arriving at a desired result in an individual case. The looseness in criminal pleading brought to light in this case should not receive encouragement through judicial sanction."

The required substance of an indictment has had careful consideration from the Eighth Circuit Court of Appeals, and in three opinions by Circuit Judge Walter H. Sanborn, the rule hereinbefore enunciated by the Supreme Court has been followed by that Circuit Court. In Armour Packing Company v. United States, 153 F. 1, 16, 14 L.R.A.,N.S., 400, the court said: "It is conceded that, where a crime is a statutory one, the indictment must set forth with clearness and certainty every essential element of which it is composed. It must portray the facts which the pleader claims constitute the alleged transgression so distinctly as to advise the accused of the charge which he has to meet and to give him a fair opportunity to prepare his defense, so particularly as to enable him to avail himself of a conviction or an acquittal in defense of another prosecution for the same offense, and so clearly that the court may be able to determine whether or not the facts there stated are sufficient to support a conviction." In this opinion Judge Sanborn cited the Carll, Hess, Cruikshank and Pettibone cases, supra.

In Martin v. United States, 168 F. 198, 205, the court said: "Where the words of the statute do not 'fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute an offense intended to be punished,' an indictment in the words of the statute is insufficient. The crime must be charged with precision and certainty, and every ingredient of which it is composed must be accurately and clearly alleged. To this end facts must be stated, not conclusions of law alone. The averment that an act innocent in itself, but criminal if fraudulently done, was done 'fraudulently' or with intent to defraud, is but a bald conclusion of law and is futile. A crime is made up of acts and intent, and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances." Citing United States v. Cruikshank, supra, and United States v. Carll, supra.

In Fontana v. United States, 262 F. 283, 286, the court said: "It is essential to the sufficiency of an indictment that it set forth the facts which the pleader claims constitute the alleged transgression, so distinctly as to advise the accused of the charge which he has to meet, and to give him a fair opportunity to prepare his defense, so particularly as to enable him to avail himself of a conviction or acquittal in defense of another prosecution for the same offense, and so clearly that the court may be able to determine whether or not the facts there stated are sufficient to support a conviction. United States v. Britton, 107 U.S. [655], 665, 669, 670, 2 S.Ct. 512, 27 L.Ed. 520; United States v. Hess, 124 U.S. 483, 488, 8 S.Ct. 571, 31 L.Ed. 516;

Miller v. United States [8 Cir.], 133 F. 337, 341, 66 C.C.A. 399, 403; * * *."

In Linde v. United States, 13 F.2d 59, 61, the Eighth Circuit Court, speaking through Circuit Judge Van Valkenburgh, said: "That they may have had guilty knowledge and participation rests upon suspicion only, arising from their acquaintance and association with some or all of the other conspirators; but to establish a conspiracy to violate a criminal statute the evidence must convince that the defendants did something other than participate in the substantive offense which is the object of the conspiracy. There must, in addition thereto, be proof of the unlawful agreement, and in this case, in our judgment, that proof is insufficient."

Other Circuit Courts have followed the same rule. In Asgill v. United States, 60 F.2d 780, 784, the Fourth Circuit Court quoted from the Pettibone case, supra, and the Carll case, supra, and used the following quotation from the Supreme Court of North Carolina in State v. Van Pelt, 136 N.C. 633, 49 S.E. 177, 180, 68 L.R.A. 760, 1 Ann.Cas. 495, a conspiracy case: " 'No offense is so easily charged and so difficult to be met unless the defendants are fully informed of the facts upon which the state will rely to sustain the indictment. While technical objections to indictments are not to be sustained, substantive and substantial facts should be alleged. General and undefined charges of crime, especially those involving mental conditions and attitudes, should not be encouraged. They are not in harmony with the genius of a free people, living under a written constitution. We can see no good reason why an exception to the general rules of criminal pleading should be made in favor of this crime.' " And concluded its opinion as follows: "The basis of a conspiracy is the unity of design and purpose; it is what has been agreed to and not what has been done, and so it has been held that several persons may, simultaneously, actually do, without incurring liability to punishment, that which, if it were the object of a preconcerted design, would render the participants liable to indictment for conspiracy; nor will evidence that each of several defendants acted illegally or maliciously with the same end in view support a charge of conspiracy, unless it appears that such acts were done pursuant to a mutual agreement."

In United States v. Robinson, 266 F. 240, 248, the District Court for the Western District of Oklahoma, in an opinion by Judge Pollock, discussed the Pettibone, the Cruikshank and the Hess cases, supra, and in conclusion said: "It follows, both in the very reason of the case itself and on fundamental principles of criminal pleading, as deduced from the well-considered opinions of powerful jurists speaking for the highest court of the land, the indictments in these cases present no issuable facts to be tried and determined by a jury touching the guilt or innocence of the defendants, but mere conclusions of the pleader; hence they are insufficient, and the several demurrers thereto must be and are sustained."

In United States v. M. Piowaty & Sons, 251 F. 375, 377, District Court of Massachusetts, the learned court, after discussing United States v. American Naval Stores Co., C.C., 172 F. 455, and Patterson v. United States, 6 Cir., 222 F. 599, in which latter case the Kissel case, supra, was quoted, said: "In my opinion, unlawful agreement is the essence of the offense of combination or conspiracy under the Sherman Act. It is what separates what is permitted from what is forbidden. To hold it illegal for persons in the same business and same trade organization, after exchanging information and views, to act in the same way, but independently of each other, on buying, selling, or prices, would extend the scope of the act beyond anything heretofore decided, and beyond its proper meaning, and would cause the greatest confusion and uncertainty."

In United States v. Colgate & Co., 253 F. 522, 528, affirmed by the Supreme Court, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992, 7 A.L.R. 443, the District Court for the Eastern District of Virginia, in passing on an indictment under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, said: "This language is too general, and the defendant has the right at least to be informed of some one particular infraction of the law that it is claimed it has committed. It would be impossible to intelligently prepare a defense or answer to this indictment, as it involves the defendant's dealings with its wholesale and retail customers throughout the territory named, covering a period of three years. This is too indefinite, and there ought to be no difficulty, if such conditions exist, as set forth in the indictment, to name some

specific instance of the alleged combination, and state the same in detail."

It is apparent, therefore, from the decisions hereinbefore cited, that an indictment cannot be considered sufficient which merely pleads general conclusions and it is equally well-established that an indictment charging a conspiracy is insufficient unless the facts constituting the agreement resulting in the conspiracy are set forth in the indictment. The crime of conspiracy cannot be alleged by simply stating the acts of the various alleged conspirators in carrying into effect the conspiracy.

Reverting to the indictment itself, paragraph 17, in the charging portion, states: "the defendants, and other persons to the Grand Jurors unknown, have engaged knowingly and continuously in a conspiracy to fix prices." This is an allegation of the acts of the defendants pursuant to the alleged formation of the conspiracy. The allegation in paragraph 18 is "it has been a part of the aforesaid conspiracy that the defendants Armour and Wilson purchase equal numbers of hogs each year and each month in the aforesaid livestock market; that the defendants Armour and Wilson from time to time, purchase particular shipments of hogs received at the aforesaid market," et cetera. In other words, the allegations in paragraph 18 are descriptive acts of the defendants done pursuant to said alleged conspiracy. In paragraph 19 the allegation is that "the defendants by agreement and concerted action have done the things which, as hereinbefore alleged, they conspired to do, and more particularly have done, among others, the following acts and things."

Because of the peculiar nature of a conspiracy and the difficult position in which a defendant finds himself to defend against generalities or blanket allegations, the facts constituting the agreement which resulted in the conspiracy must be alleged and no element of a conspiracy has been more generally recognized by the courts than that an alleged conspirator may not be considered a part of the conspiracy unless some act of his in agreement with another defendant constituted an agreement to do the things alleged as acts of the conspirators. In other words, a number of defendants might perform illegal acts and the performance of such acts would not indicate a conspiracy. Mere uniformity of action in the performance of acts would not constitute a conspiracy. There must first be an *agreement* to do certain illegal acts, or to do legal acts in an illegal manner, before a conspiracy is established. Armour may have paid the same price for hogs that Wilson did and may have purchased the same number of hogs as purchased by Wilson, but unless preceding those acts there was an agreement between Armour and Wilson to perform these specific acts, the acts themselves would be no evidence of a conspiracy.

An allegation that ten different stores charged the same price for coffee, sugar, or canned goods of a special brand would certainly indicate a uniformity of action but not necessarily a conspiracy. For instance, a cigar store in Dallas, one in Tulsa and one in Oklahoma City charge the same price for a special brand of cigar. The managers of the respective stores are not even acquainted with each other, yet there is an observance of a uniform price. There is no contention under this state of facts that these stores have agreed among themselves that they would observe a uniform price. Prices all over the land are presumed to be fixed by supply and demand. Competition, legitimate in every respect, has a leveling influence upon price fixing. If a wholesale house sells to all its customers commodities at the same price, what price would the retailers be expected to charge? As stated above, the mere fact that Armour and Wilson, being institutions similar in size and capacity, and being situated adjoining each other and adjoining the stockyards where hogs are sold through commission agents representing the producers, purchase substantially the same number of hogs, is not of itself evidence of a conspiracy.

There is no controversy over the proposition that under the Sherman Act the conspiracy itself constitutes the offense and that it is unnecessary to allege overt acts to constitute the completed offense as under the general conspiracy statute. Since, therefore, the conspiracy is the offense, an allegation of facts constituting the agreement between the alleged conspirators which resulted in the conspiracy must be stated definitely.

The thought is quite well-expressed in the case of United States v. Grunberg, C. C., 131 F. 137, 139. Here all the elements of the conspiracy had been stated except the overt act, and the court, in discussing the indictment, said: "The indictment

must go at least so far as to point out something as to the way in which the parties intended to defraud, because there cannot be a conspiracy known to the grand jury, without some knowledge of the general line in which it was to march."

██ A careful examination of this indictment convinces this court that since there is no express allegation of facts from which it can be determined that an agreement was entered into to do the things alleged in this indictment, the allegations of the indictment are insufficient to constitute a conspiracy on the part of the defendants to do the things alleged to have been done.

The demurrers of the respective defendants will be sustained and an exception allowed the government.