**UNITED STATES v. GREATER KANSAS CITY RETAIL COAL MERCHANTS' ASS'N et al.**

No. 17328.

United States District Court
W. D. Missouri, W. D.

Aug. 10, 1949.

506

Sam M. Wear, United States Attorney, Kansas City, Missouri, Herbert A. Bergson, Horace L. Flurry, George A. Keim, Jacob M. Roey, Fred D. Turnage, Special Assistant Attorneys General, for plaintiff.

Ira B. McLaughlin, Kansas City, Missouri, for defendant Grover C. Mathis, d. b. a. Apex Coal Co.

Terence M. O'Brien, Kansas City, Missouri, for all other defendants.

RIDGE, District Judge.

The indictment herein; revealing the following facts, charges the defendants (seven corporations, six of the officers thereof, and nine individuals) with forming a combination and conspiracy to fix, stabilize, maintain and raise the price of coal sold and distributed at retail in the greater Kansas City area. The terms "coal," "dealers," and "greater Kansas City area" are specifically defined and delimited in the indictment. The nature of trade and commerce involved is that users of coal within said area purchase the same almost entirely from defendant "dealers" who maintain places of business and coal yards in the area. All defendant dealers purchase such coal from wholesalers, jobbers or directly from coal producers, which coal is shipped directly to the dealers from coal mines located in states other than the states of Missouri and Kansas, and

some of such coal is shipped from mines in the State of Kansas to dealers in the state of Missouri, and vice versa. Some defendant dealers located in the state of Missouri sell to users in the state of Kansas, and some dealers located in Kansas sell to users in the state of Missouri. The coal so purchased by dealers is car loaded at mines and transported therefrom in interstate commerce to sidings of the dealers, from whence a substantial quantity of it is delivered to users immediately after arrival of said cars. Some dealers stock pile said coal and make deliveries to users therefrom.

The indictment charges that since approximately September 15, 1933, the exact date being unknown, and continuously up to and including the day of the presentation of the indictment, the defendants have been engaged in a combination and conspiracy to fix, stabilize, maintain and raise the price of coal sold and distributed in said area, in restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1. The gist of the combination and conspiracy so charged is that defendants agreed and, by concert of action among them, (a) established a cash price which defendant dealers charged in sales of coal to users of domestic fuel in the area; (b) agreed upon the cash price charged in sales of coal to apartments, hotels, churches, garages, hospitals, private schools and other large users of coal; (c) submitted bids to sell coal to public school systems on the basis of bids at prices agreed upon; (d) and agreed upon uniform charges to be made by dealers for extending credit to purchasers of coal. Overt acts set forth in the indictment alleged to have been committed in furtherance of the conspiracy are stated as follows: (a) defendants from time to time on January 3, 1946, and thirteen other specified dates, including July 12, 1948, put into effect uniform price changes, raising the cash price at which they sold coal to users of domestic coal; (b) that defendant dealers during period covered by indictment submitted bids to sell coal to the public school system of Kansas City, Kansas, and Kansas City, Missouri, at uniform prices; (c) that during said period they put into effect uniform charges for extending credit to purchasers of coal; (d) that defendants threatened to cause the supply of coal to be cut off in the event dealers failed to adhere to the agreed upon prices; (e) that defendants caused producers and wholesalers to discontinue selling coal to dealers who sold coal at prices other than those agreed upon by defendants; (f) defendant association assessed and collected membership fees based on tonnage sales by dealers, accumulated large surplus therefrom, and forfeited dealers' right to share in redistribution of fund upon dealers' withdrawal from the association; and (g) defendants required dealers to make their business records available to defendant association auditors and caused audits of cost of dealers doing business and circulated same among its members for the purpose of promoting uniform price increases for coal. It is charged that the effect of the combination and conspiracy has been to directly, substantially and unreasonably restrain interstate trade and commerce in coal; to arbitrarily fix, stabilize, maintain and raise the price of coal shipped in interstate trade and commerce; to diminish competition between coal dealers in the sale and distribution of coal moving in such trade and commerce; and to control and limit the supply and movement of coal in interstate trade and commerce. Jurisdiction and venue is laid by allegation that the combination and conspiracy charged were entered into and carried out in part in the jurisdiction of this court, where a majority of the defendants reside, have their places of business, and transact business, and that within the applicable period of limitation, defendants, within the jurisdiction of this court, performed many of the overt acts charged.

Defendants challenge the sufficiency of the indictment, by way of motion to dismiss, because the indictment fails to allege: "the names of those who formed the alleged conspiracy or combination; when and where it was allegedly formed; the manner and means by which

it was allegedly formed; whether the alleged combination or conspiracy consisted of an express or an implied agreement; whether the alleged conspiracy was formed by an oral or a written agreement; the names of those who joined the alleged conspiracy or combination after its formation; when and where each of such parties allegedly joined; the manner and means by which each allegedly joined; whether each such alleged joining consisted of express or implied agreements; whether each such alleged joining was done in writing or orally; what particular part it is claimed each defendant had in the alleged combination or conspiracy; when, where, in what manner, and which defendants performed overt acts in furtherance of the alleged conspiracy; what acts were performed in furtherance of the alleged combination of conspiracy within the jurisdiction of this court within the applicable period of the statute of limitation; when and where they were performed; and by which defendants."

Such challenge cannot be sustained when considered either separately or collectively. All such factors are more properly addressed to the indictment by way of a motion for bill of particulars and not through motion to dismiss for failure of the indictment to allege facts sufficient to charge an offense. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 463, 86 L.Ed. 680.

■ The constituent elements of time, place, manner, means and effect through which the government here charges defendants with violation of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, are generally alleged in the instant indictment so as to establish a violation of that act. "The particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object of a conspiracy for which (defendants) contend is not essential to an indictment" returned under the Sherman Act. Glasser v. United States, supra. Such an indictment is legally sufficient if it generally charges all the essential elements of the offense with sufficient clarity to advise the defendants of the accusation made against them, to enable them to prepare their defense, and to enable them to plead a judgment of conviction or acquittal thereon in bar to a subsequent prosecution for the same offense, Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; even though the generality of the charges made may be subject to being particularized. Cf. United States v. Central Supply Ass'n, et al., D.C., 40 F.Supp. 964.

■ In regard to the "time" of the conspiracy here charged, it is alleged as beginning September 15, 1933, and continuing thereafter up to and including the day of the presentation of the indictment. The conspiracy thus alleged is in effect charged to have been renewed each day during its continuance. United States v. Borden Co., 308 U.S. 188, 202, 60 S.Ct. 182, 84 L.Ed. 181. The "place" where such conspiracy was entered into and performed in part is alleged to be in the "greater Kansas City area", within the jurisdiction of this district court. "The allegation that the conspiracy was entered into and carried out in part within the district in which the indictment was returned was sufficient in respect to place, as against an attack by motion or demurrer on the ground of complete infirmity of the indictment." Frankfort Distilleries v. United States, 10 Cir., 144 F.2d 824, 832.

The manner and means by which defendants are alleged to have unlawfully conspired are detailed by the agreements and concert of action that the government charges defendants concluded to establish uniform retail prices of coal to users; in submitting bids on agreed prices; and in agreeing and establishing uniform charges for extending credit to purchasers of coal. These things the indictment charges constituted a conspiracy to restrain interstate trade and commerce, to diminish competition between coal dealers, or to control or limit the supply and movement of coal in such trade and commerce, as the case may be. Such particularity is all that is essential to allege the manner and means of effecting the conspiracy here charged. Glasser v. United States, supra. Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232; United States v. Empire

Hat and Cap Mfg. Co., et al., D.C., 47 F. Supp. 395; United States v. Virginia-Carolina Chemical Co., et al., C.C., 163 F. 66.

The indictment names the defendants as those who formed the conspiracy. It charges such conspiracy to be a continuing one, so that defendants are informed thereby that each day of its continuance they are charged with the formation and continuance of the allegedly unlawful conduct in violation of the Sherman Act. Cf. United States v. Borden, supra. Whether the agreement constituting the conspiracy and combination was express or implied among defendants, oral or in writing, is immaterial. The essential element of the offense is that such an agreement is charged to have existed between the defendants and that is all that is necessary to allege in the indictment to sufficiently state, the crime here considered. United States v. M. Piowaty & Sons, et al., D.C., 251 F. 375. When and where the defendants individually joined the alleged conspiracy, the manner and means by which they joined, whether by express agreement, orally or in writing, and the particular part each defendant performed in the conspiracy are not essential allegations to charge the offense. The indictment sets forth specific overt acts performed in furtherance of the conspiracy and alleges that the conspiracy was entered into and carried out in part in this district. When and where within the district, in what manner, and which defendant performed such acts are not essential allegations in testing the sufficiency of the instant indictment. It is not necessary that a conspiracy indictment set forth in detail each separate transaction and the part each of the individuals engaged therein performed. United States v. Patterson, D.C., 201 F. 697. The venue of the crime here charged is laid by allegation of facts, revealing overt acts committed within the jurisdiction of this United States District Court. Identical venue allegations have been sustained as sufficient to establish where and when the offense of conspiracy under the Sherman Act was consummated and the jurisdiction of the courts thereover. United States v. Trenton Potteries, 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; United States v. New York Great Atlantic & Pacific Tea Co., 5 Cir., 137 F.2d 459.

Defendants' challenge of the sufficiency of the indictment for failure to negative the proviso in Section 1 of the Sherman Act, supra, (The Miller-Tydings Amendment) cannot be sustained. It is not required that an indictment contain allegations negativing every possible theory of innocence of an accused, Evans v. United States, 153 U.S. 584, 14 S.Ct. 934, 38 L. Ed. 830, or such possible defenses as may be set up by the defendant. Stokes v. United States, 157 U.S. 187, 15 S.Ct. 617, 39 L.Ed. 667. Where the language of a statute defining the offense is so entirely separable from the exception therefrom that the ingredients of the offense may be stated without reference to the exception, such matter need not be referred to in an indictment. McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301; United States v. Cook, 17 Wall 168, 21 L. Ed. 538. It is only where a statute defining an offense contains an exception or proviso in its enacting clause, which is so incorporated with the language describing and defining the offense that the ingredients of the offense cannot be accurately and clearly stated if the exception is omitted, that it is necessary to negative such exception or proviso in an indictment. United States v. Britton, 107 U.S. 655, 2 S.Ct. 512, 27 L.Ed. 520. Under Section 1 of the Sherman Act the substantive offense of conspiracy, aliunde a contract for resale, may be accurately and clearly described without reference to the proviso in said act. Manifestly a conspiracy or combination among retail dealers engaged in a single line of business themselves, to lessen competition and to raise prices, could not be within the ambit of the Miller-Tydings Amendment. Such retail dealers are, but for the conspiracy and combination alleged, clearly established to be competitors with each other under such circumstances. The Miller-

Tydings Amendment makes no exception as to competitors on a horizontal trade basis. United States v. Univis Lens Co., 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408; United States v. Bausch & Lomb Opt. Co., et al., D.C., 45 F.Supp. 387. Consequently the indictment here under the above related facts cannot be held defective for failure to negative the provision contained in Section 1 of the Sherman Act.

Defendants' further attack against the indictment on the ground that the facts alleged only reveal intra-state price fixing in the retail sale of coal is without merit. Restraints on interstate commerce to be effective "do not have to be applied all along the line of movement of interstate commerce. . The source of the restraint may. be intrastate, as the making of a contract or combination usually is; the application of the restraint may be intrastate, as it often is; but neither matters if the necessary effect is to stifle or restrain commerce among the states. If it is interstate commerce that feels the pinch, it does not matter how. local the operation which applies the squeeze." United States v. Women's Sportswear Manufacturers Association, et al., 336 U.S. 460, 464, 69 S.Ct. 714, 716. It is too late in .the day to say that a conspiracy or combination to fix and maintain prices, either at the beginning or end, of goods customarily and normally moved and shipped in interstate commerce, does not operate directly to restrain and monopolize interstate commerce. Local 167 v. United States, 291 U.S. 293, 54 S.Ct.. 396, 78 L.Ed. 804; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; United States v. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; Eastern States Lumber Ass'n v. United States, 234 U.S. 600, 34 S. Ct. 951, 58 L.Ed. 1490, L.R.A.1915A, 788; United States v. Trenton Potteries Corp., 273 U.S. .392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; Mandeville Island Farms, Inc., .et al., v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328.

The indictment herein charges a single continuing conspiracy. As laid, it alleges several related acts and means, occurring over a stated period of time, for making · the conspiracy · effective. "The several acts and· means of making the conspiracy effective are related acts which enter into the crime, but still the single crime is that of combining and conspiring together to restrain interstate trade and commerce, or to monopolize such trade and commerce, Duplicity in an indictment means the charging of two or more separate and distinct offenses in one count, not the charging of a single offense into which several related acts enter as ways and means of accomplishing the purpose." Frankfort Distilleries v. United States, 10 Cir., 144 F.2d 824, 832.

It is rudimental law that a conspiracy, once shown to exist, is' presumed to continue whenever one conspirator does some act in furtherance of its purpose. United States v. Perlstein, 3 Cir., 126 F.2d 789. In a continuing conspiracy proof of an overt act is necessary only to establish the continued existence of the agreement and to bring the existence thereof within the applicable period of limitation, and not as an essential part of the, conspiracy itself. Safarik v. United States, 8 Cir., 62 F.2d 892.

Even though the offense under the Sherman Act is complete when a conspiracy is· formed, yet when the indictment charges that the unlawful conspiracy continued throughout a given period and an overt act is shown to have been committed within the applicable statute of limitation, prosecution therefor is a single offense and evidence may be offered commensurate with the entire time the conspiracy is alleged to have been formed and continued. United States v. Kissell and Harned,. 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168. In charging a continuing conspiracy committed by several means for the single purpose of fixing, stabilizing, maintaining and raising prices of coal in restraint of interstate trade and commerce, the indictment herein is not defective because of duplicity.

From what has heretofore been said it clearly appears that jurisdiction and venue of the crime here· considered is properly lodged in this district court. Therefore the separate motion of Apex Coal Com-

pany and the joint and several motions of defendants, Greater Kansas City Retail Coal Merchants Association, et al., are by the court overruled.

### Motions to Strike.

In prosecutions for conspiracy the government has the right to show the whole history of the conspiracy from the commencement thereof to its conclusion. It is no objection that the evidence covers a period of time prior to the statutory limitation within which the prosecution may be maintained, if the facts shown have a bearing on the existence of the conspiracy continuing within the statutory period. Baker v. United States, 8 Cir., 276 F. 283; St. John v. U. S., 7 Cir., 268 F. 808; Haywood v. U. S., 7 Cir., 268 F. 795, certiorari denied 256 U.S. 689, 41 S.Ct. 449, 65 L.Ed. 1172; Nyquist v. U. S., 6 Cir., 2 F.2d 504, certiorari denied 267 U.S. 606, 45 S.Ct. 508, 69 L.Ed. 810.

There is no allegation in the indictment relating to the sale of branded coal in the state of Kansas. If such fact exists and the evidence at time of trial further shows that it was sold within the ambit of the Miller-Tydings Amendment, then such sales of course would be no evidence of the conspiracy charged. A proper objection thereto at time of trial may result in deleting or limiting testimony thereon. There is no allegation to strike from the indictment because of the existence of that fact, even if true, at this time.

The same is true with reference to the period covered by the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq. If defendants merely sold coal at maximum prices during the enforcement period of that Act, without the existence of any agreement between them to fix, stabilize and maintain the price of coal at such maximum, the fact that each of them so retailed coal to users could be no evidence of a conspiracy. However, though defendants were by the regulations promulgated under the Emergency Price Control Act of 1942 lawfully authorized to charge a maximum price for coal, yet if they did so by agreement to fix, stabilize and maintain such price at the allowable maximum, then we do not perceive how defendants can exclude testimony concerning that fact, if introduced solely because of the enactment of the Emergency Price Control Act of 1942. What defendants may have legally done separately under that act would, if done in concert, resulting in restraint of interstate trade and commerce, be a violation of the Sherman Act.

Sub-paragraphs (f) and (g) of Paragraph 17 allege facts from which it may be inferred that the government charges that defendant Association herein policed its membership and placed obligations on its members to prevent competition among such members, promote uniform prices, and lend inducement to such members to remain in participation of the conspiracy charged. Although from the allegation of subparagraph (f) we fail to perceive how the facts there stated, if true, tended to fix and stabilize the price of coal as charged, in restraint of trade and commerce, we hesitate, without some reason other than that stated in the motion to strike, to cause such allegation to be deleted from the indictment. The government has the right to reveal the entire operations of the parties to a conspiracy, how they conducted their business, the means they used, etc., in making proof of the conspiracy. Though such a showing may be more than embarrassing to the conspirators and inflame the jury against them, yet such matters, tending to reveal the modus operandi of the conspirators, would be relevant and proper subjects of inquiry. The court cannot now determine what importance the government attaches to such circumstance. It does not clearly appear that the allegations made in sub-paragraph (f) are wholly irrelevant, and the court cannot say that they are of such a character as to be prejudicial per se to defendants.

The several motions of the defendants to strike are overruled.

### Bill of Particulars.

We have heretofore considered many of the matters defendants seek to have the government set forth by way of Bill of Particulars, from the standpoint

512

whether such matters are essential allegations to the charging of an offense for violation of the Sherman Act, and have held that a detailed statement thereof is not necessary in the instant indictment. It is a fundamental principle concerning bills of particulars that where the offense charged in an indictment is stated with sufficient clearness and definiteness that defendants are informed of the nature of the charge made against them, so they might plead former acquittal if subsequently charged with the same offense, and defendants might reasonably be expected to prepare a defense, without surprise, such motions will be refused. United States v. General Electric Co., D.C., 40 F.Supp. 627, and cases there cited by Judge Liebell. Such motions are seldom granted where to do so will unduly limit the evidence of the prosecution. Mulloney v. United States, 1 Cir., 79 F.2d 566, certiorari denied 296 U.S. 658, 56 S.Ct. 383, 80 L.Ed. 468. In a prosecution under the Sherman Act, the existence or non-existence of the conspiracy charged is the sole issue for determination. Proof thereof is usually made by circumstantial evidence. It is readily apparent that from the nature of such a prosecution a too detailed statement of the ultimate facts, either in an indictment or bill of particulars, would seriously interfere with the government's presentation of such actions. United States v. General Petroleum Corp., D. C., 33 F.Supp. 95.

 To grant defendants' first and second request for bill of particulars herein would be to require the government to set forth practically all the evidence it has in this case. The conspiracy here charged is alleged to have come into existence about the time the defendant, Greater Kansas City Coal Merchants Association, Inc., was incorporated. Whether the then incorporators and officers of such corporation or the then officers of the other corporate defendants or individuals named in the indictment were the parties who formed the alleged conspiracy, and the manner and means they used in its formation, are matters which the evidence at time of trial will probably reveal, but the government should not be required to state such mat-

ters at the present stage of the case. The precise date when either, or any, of the defendants joined, if so, the conspiracy is likewise a matter of evidence which the court should not now require the government to adduce, and thereby limit the proof of the government. Specific identification and detailed statement of particular constituent facts establishing proof of the formation, existence and joining of a conspiracy should not be required to be stated by the government. To do so would be to unduly limit the government in its proof and compel the prosecution to reveal its evidence before time of trial. It is not the function of a bill of particulars to force the government to reveal its evidence in advance of trial, or the kind of testimony it will offer.

 The matter and events which defendants seek in the remaining items of their motions for bill of particulars relate to overt acts alleged to have been committed in furtherance of the conspiracy. Overt acts are no part of the crime of conspiracy denounced by the Sherman Act. Nash v. United States, 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232. Consequently allegations revealing such acts are not required to be alleged in an indictment. The fact that overt acts are alleged in the instant indictment is of distinct benefit to defendants, as said allegations inform the defendants of the character and trend the government's evidence will take at the trial. This we think is all that defendants are entitled to, and that the government should not be required to state what particular part each defendant had in the alleged conspiracy, or where, when and how such overt acts were committed.

The indictment here returned against defendants contains but a single charge of violation of the Sherman Act. The conspiracy and combination alleged is delimited as to time, place, manner, means and effect. The defendants are fully informed as to such matters and the period the conspiracy is alleged to have been in existence. Whether defendants ever participated in the conspiracy to effect its object, as alleged in the indictment, must be known by them. If defendants did not so conspire

they can readily defend against the charge so made. Successfully so defending, each of the defendants can plead former acquittal for any offense subsequently charged against them for violation of the Sherman Act by the manner and means here alleged on any date between September 15, 1933, and the date of the returning of the instant indictment. The defendants cannot be hereafter taken by surprise by any additions made to the nature of the charge here alleged. They may be astonished by such charge and the course the evidence introduced at time of trial takes, but such factors are not grounds for sustaining their bill of exceptions addressed to the instant indictment.

Defendants' motions for bill of particulars are severally overruled.

### Immunity.

Certain of the individual defendants have filed supplemental motions to dismiss, claiming immunity from prosecution in this action because of becoming witnesses and producing documents and records before the Grand Jury, on subpoena of the government. The government has filed with their brief excerpts from the transcript of testimony given before the Grand Jury by said defendants. Defendants have filed motion for hearing on their said motions so as to be afforded an opportunity to refute such transcript and establish the extent of the immunity so claimed. Defendants are entitled to such a hearing in open court. Such hearing will be granted, limited, however, to the nature, character and extent of the testimony claimed to have been given by said defendants before the Grand Jury, and the nature and character of documents produced, if so, by said defendants. The court does not hereby intend to sustain that portion of said defendants' motions seeking to require the government to produce a complete transcript of all testimony given before the Grand Jury and the documents said defendants adduced before the Grand Jury. The government need not produce such documents at said hearing. The hearing aforesaid is now set for Friday, July 29, 1949, at 10:00 o'clock a.m.

### Memorandum.

The defendants Botsford, McDaniel, Sweeney, Tiffany and Yeo have filed separate supplemental motions to dismiss the indictment returned against them individually, on the ground of plea of immunity. The government has moved to strike such special pleas.

The claims of immunity so made are premised upon Sections 32 and 33, Title 15, U.S.C.A. They are asserted to arise in this fashion: that in obedience to a personal subpoena duly served on each of the named defendants, they appeared as witnesses for the Government before the Grand Jury that returned the instant indictment "and under oath gave testimony substantially connected with the transactions covered by the indictment." At a hearing held on said motions the evidence adduced revealed that each of said defendants is an officer of a corporation jointly indicted herein. A subpoena duces tecum was previously served on the corporation of which each of said individuals is an officer, commanding the corporation to produce before the Grand Jury specified corporate documents. The personal subpoenas were served later on each of said defendants, and each appeared before the Grand Jury, were sworn and gave testimony the whole effect of which was that they were an officer of the named corporation and that the documents adduced before the Grand Jury in response to the subpoena duces tecum were corporate documents of the corporation of which they respectively were officers. Beyond identifying their positions and the corporate documents aforesaid, no other testimony was attempted to be, or was, elicited from said witnesses before the Grand Jury.

Under such circumstances, we do not believe the claim of immunity here made by each of said defendants is allowable for the following reasons: (a) There is no showing here made that the testimony given by said parties was in respect to any personal matter substantially connecting either of them with the transactions set

forth in the indictment. (b) The testimony elicited from said parties before the Grand Jury was solely in regard to their official capacity in respect of the corporation of which they were officers and the identification of corporate documents; under such circumstances, said parties were not immune from being compelled to give testimony of corporate affairs and documents under the Fifth Amendment of the Constitution of the United States, and not being so privileged, no right to immunity here exists.

In Heike v. United States, 227 U.S. 131, 142, 33 S.Ct. 226, 228, 57 L.Ed. 450, Ann.Cas.1914C, 128, it is said that the statute under which immunity is here claimed "should be construed, so far as its words fairly allow the construction, as coterminous with what otherwise would have been the privilege of the person concerned" if immunity was similarly claimed under the Fifth Amendment of the Constitution. 227 U.S. on page 144, 33 S.Ct. on page 228, 57 L.Ed. 450, Ann.Cas.1914C, 128, of the opinion it is further stated: "When the statute speaks of testimony concerning a matter it means concerning it in a substantial way, just as the constitutional protection is confined to real danger, and does not extend to remote possibilities." In light of what is there said, we are of the opinion that before immunity to prosecution is to be allowed under the statute here considered, some showing must be made that the person making claim thereto gave testimony, before a grand jury, of a substantial character relating to some personal transactions being investigated, as in violation of the Sherman Act; and that in respect of the testimony so given, such party then presently had the privilege of making claim against self-incrimination under the Fifth Amendment as to the testimony so given.

None of the testimony here shown to have been given by defendants, when they were witnesses before the Grand Jury, was within the ambit of the individual privilege afforded them under the Fifth Amendment, supra. As officers of their respective corporations they could not refuse to produce before the Grand Jury books and records of their corporations, under proper subpoena, even though the contents thereof might tend to incriminate them, individually. United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R. 1202. As officers of the respective corporations, they could, in the federal courts, be required to give testimony concerning only the identity of such corporate records, without violating any of their personal constitutional privileges, though the corporate records they identified may tend to their incrimination. Carolene Products Co. v. United States, 4 Cir., 140 F.2d 61; Lumber Products Ass'n v. United States, 9 Cir., 144 F.2d 546; United States v. Greater New York Live Poultry C. of C., D.C., 34 F.2d 967; United States v. Austin-Bagley Corp., 2 Cir., 31 F.2d 229; United States v. Lay Fish Co., D.C., 13 F. 2d 136. The underlying reason for the principles of law just stated are clearly elucidated in the authorities cited, it need not be reiterated here. Suffice it to say that if the above-named defendants could make no claim of self-incrimination, under the Fifth Amendment of the Constitution, on account of the character of testimony here shown to have been given by them before the Grand Jury, then the Heike case, supra, spells that no grant of immunity here exists in their favor solely by virtue of the statutes in question. Under such circumstances, the statutes considered could not be held to grant an immunity "coterminous" with that of their individual constitutional privileges, and the testimony shown to have been given is not established as being in respect to "any matter substantially connected with the transactions in respect of which" they gave testimony.

We assume that the corporate records which each of the above parties identified before the Grand Jury were "matters substantially connected with the transaction" referred to in the indictment. Being corporate records, they were not within the protection of the immunity against self-incrimination of the Fifth Amendment so far as the corporation to which they belonged are concerned. Wilson v. U. S., 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558. Each of

the above individuals, with exception as to defendant Yeo, testified before the Grand Jury that the subpoena duces tecum pursuant to which such records were produced before the Grand Jury, was served on them as an officer of their respective corporation. The subpoena duces tecum as to the two corporations of which defendant Yeo is an officer was left at the office of said corporations, in his absence, but from his testimony it clearly appears that he is the officer of such corporations, having control of the corporate books and records thereof, and that he personally produced them before the Grand Jury. Being officers of their respective corporations, having custody of the books and records thereof, the simple act of identification to which they each testified, was incidental to the performance of their duties as officers of their respective corporations, in producing before the Grand Jury the books and records of the corporations subpoenaed under duces tecum and was not testimony of such a personal nature as would come within the privilege of the Fifth Amendment so far as said individuals are concerned. Whether said books and records connect any of individual defendants with the transaction in question, the Government must make further proof, other than the mere fact of identification of said records. Without such further proof, the mere testimony of identification of said books and records before the Grand Jury could only remotely connect any of the above individuals with the transaction referred to in the indictment and under such circumstances such testimony is insufficient to justify the allowance of a claim of immunity, either under the statute or the Fifth Amendment.

United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 410, 87 L.Ed. 376, relied on by defendants, does not militate against the conclusion here reached. There, "no question (was) made but that the testimony so given did substantially relate to the transactions which were the subject of the indictment." The testimony there considered is not set forth, but one cannot read that opinion and conclude therefrom other than that said testimony was of such a character as could have sanctioned Monia making

a claim of privilege against self-incrimination, on account thereof, under the Fifth Amendment. Under such a situation only can testimony be considered as being "substantially connected with the transaction in respect of which" it is given. The court there reaffirmed Heike v. United States, supra, and said "that the immunity conferred by the legislation in question was intended to protect the witness to the same extent that the Fifth Amendment protects him"; that said "Amendment did not justify a claim of privilege against * * * remote contingencies" and "the immunities" granted by the statutes in question "should be likewise construed not to reach them."

"The statute should be limited as nearly as may be by the boundaries of the constitutional privilege of which it takes the place" is the mandate of Shapiro v. United States, 335 U.S. 1, 28, 68 S.Ct. 1375, 1390, 92 L.Ed. 1787. Consequently, absent a showing by the moving defendants that they gave testimony "substantially connected with the transaction" in question and that such testimony was within "the boundaries of the constitutional privilege" afforded them against self-incrimination, no right to immunity here exists in their favor merely because they were subpoenaed, sworn and identified certain corporate records before the Grand Jury.

■ What has been said also disposes of the motion of defendant Richard R. Beatty, doing business as Tower Coal Company, with one further observation. Defendant Beatty was not sworn as a witness and gave no testimony before the Grand Jury. Said defendant did produce certain documents to counsel for the Government, in response to a subpoena duces tecum. Such documents have not been shown to have been exhibited to the Grand Jury, and we are assured by counsel for the Government that they were not so exhibited. Under such state of facts, we do not perceive how defendant Beatty can make claim to immunity under the statute. Though said documents may be personal to him, he being an individual coal dealer and not a corporate one as alleged in the indictment, yet he has not been incriminated on account of the delivery of such documents to

516

Government counsel, and without some semblance of self-incrimination, no right of immunity could possibly exist. Beatty was not sworn as a witness and gave no testimony before the Grand Jury. Before immunity attaches under the statute, a witness must be "sworn" and give testimony "substantially connected with the matter" set forth in the indictment.

From what has been said, the plaintiff's motion to strike the separate supplemental motions to dismiss of the defendants Yeo, McDaniel, Botsford, Tiffany, Sweeney and Beatty should be sustained. It is so ordered.